IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

FILED IN CHAMBERS
U.S.D.C. Atlanta

MAR 2 5 2008

By JAMES N. HATTEN, Clerk
Deputy Clerk

CARL GERAN,

        Plaintiff,

v.

GARY MCMILLAN, individually and
in his official capacity, and
T-MOBILE USA, Incorporated,

        Defendants.

CIVIL ACTION NO.

1:06-CV-2506

**ORDER AND OPINION**

This case is presently before the Court on defendants Gary
McMillan and T-Mobile USA, Inc.'s Motion for Summary Judgment [16].
The Court has reviewed the record and the arguments of the parties
and, for the reasons set out below, concludes that defendants'
Motion for Summary Judgment [16] should be **GRANTED**.

**BACKGROUND**

This is an employment discrimination case under Title VII of
the Civil Rights Act of 1964. Plaintiff Carl Geran, who is of
Antiguan national origin, asserts that defendants T-Mobile, a
national telecommunications company, and Gary McMillan, plaintiff's
manager at T-Mobile, (collectively, "T-Mobile") illegally
discriminated against him when T-Mobile terminated his employment

AO 72A
(Rev.8/82)

in April 2005.[1]   Defendants assert that Geran was terminated for falsifying his own time records and those of his subordinate, John Herring ("Herring").

In 1998, Western Wireless hired plaintiff as an Operations Analyst in its Issaquah, Washington office.    (Plaintiff's Deposition ("Pl.'s Dep.") at 34 and Ex. 2.)   Later, VoiceStream Wireless, a spin-off of Western Wireless, hired plaintiff in 1999 and promoted him to Operations Supervisor in its Bothell, Washington office.   (*Id.* at 36 and Ex. 3.)   VoiceStream Wireless then promoted plaintiff to Operations Manager.   (*Id.* at 40.) VoiceStream Wireless was acquired in 2001 and renamed T-Mobile. (Brief in Support of Defendants' Motion for Summary Judgment [16] ("Defs.' Br.") at 4.)   Through the transition, plaintiff continued to work at T-Mobile in the Bothell office.   (Pl.'s Dep. at 42.)

In order to be closer to his parents, who were hospitalized in New York, plaintiff asked T-Mobile to transfer him to the Data-Operations Center in Atlanta, Georgia.   (*Id.* at 61-62.)   T-Mobile

---

[1]   In his deposition testimony, plaintiff stated that his last day of work was May 25, 2005.   (Pl.'s Dep. at 111.)   Defendants' counsel questioned plaintiff as to whether his last day was April 25 or May 25, 2005.   (*Id.* at 112.)   It appears that plaintiff was mistaken, and that his last day of work was in fact April 25, 2005. Plaintiff indicated that his last day of work was "that Monday, the 25th."   (*Id.* at 112.)   April 25, 2005 was a Monday; May 25, 2005 was a Wednesday.   (*See also Id.* at Ex. 19 (indicating that plaintiff filed a discrimination charge against T-Mobile on April 29, 2005, after being discharged).)

AO 72A
(Rev.8/82)

granted plaintiff's request and plaintiff moved to Atlanta on February 27, 2003. (*Id.* at 42.) In Atlanta, plaintiff was the night shift manager, overseeing senior analysts John Herring, Nancy Durden ("Durden"), and Roosevelt Gooding ("Gooding") during the Monday through Thursday shifts. (*Id.* at 95.) Plaintiff reported to Senior Manager Gary McMillan ("McMillan"). (*Id.* at 69 and Ex. 9.) Plaintiff's job required him to work not only nights, but also some days and weekends. (*Id.* at 70-71; Defs.' Br. at 5.) Ultimately, T-Mobile terminated plaintiff on the basis that he falsified his time records and approved the falsification of Herring's time records. (Pl.'s Dep. at 47.)

Specifically, T-Mobile tracked employee time records with a computerized system called "MyVoice." (*Id.* at 75 and Ex. 13.) For salaried (exempt) employees, the MyVoice system came pre-loaded each week with their schedules. (*Id.* at 75.) If a salaried employee was absent from work due to sickness, vacation, or otherwise, then the employee was required to record "exception hours" in the MyVoice system. (*Id.* at 77.) The exception hours were then debited from the employee's bank of exception hours. (*Id.* at 83.) If a salaried employee did not enter exception hours into MyVoice, then his bank of hours was not debited. (*Id.* at 82.) Failing to enter one's own exception hours is a violation of the

3

T-Mobile Employee Handbook, which provides:

> Exempt employees are required to record and submit only
> their "exception hours," such as absences for vacation,
> sick leave, etc.

> You must ensure that your actual hours of work or your
> exception hours are recorded accurately. Submitting your
> time on-line or on a time sheet is your certification
> that you have accurately recorded all hours worked for
> the company. Falsification of time worked . . . is a
> violation of Company policy and may result in . . .
> termination.

(*Id.* at Ex. 13.)

There was, however, one limitation to the MyVoice system: it
did not allow salaried employees to enter exception hours in less
than full shifts. (*Id.* at 78.) If a salaried employee took less
than a full day off, he could not record that fact in MyVoice;
instead he was required to notify his manager, provide his cell
phone number to his subordinates, and make up the hours at another
time. (*Id.* at 80, 87-88.)

For hourly (non-exempt) employees, the MyVoice system required
each employee to record her own number of hours worked each day.
(*Id.* at 84 and Ex. 13.) For each shift, an employee could record
that she worked that shift, worked that shift and worked overtime,
worked part of the shift and took exception hours for the remainder
of the shift, or did not work at all and took exception hours for
the entire shift. (Defs.' Br. at 7.)

4

In addition, employees acting in a supervisory capacity were required to approve the hours of their subordinates (Pl.'s Dep. at 83):

> Supervisors are responsible for reviewing employee time entry data on a daily basis (for non-exempt direct reports) or weekly basis (for exempt direct reports) to identify any obvious errors and to assure their knowledge of time worked by their employees. If any apparent errors are identified by supervisors, the supervisor must notify the employee and ask the employee to review and correct the time entries (if an error was made). Supervisors must complete their review of time entries for all direct reports before the close of the online time entry. Failure of supervisors to complete their review will not delay the processing of employee time entries or the payment of employee wages, but may serve as grounds for discipline, up to and including discharge, for supervisors.

(Pl.'s Dep. at Ex. 13.) Plaintiff had password-protected access to his subordinates' time records and understood that the failure to properly approve or disapprove of his subordinates' time records could result in termination. (Pl.'s Dep. at 83, 132-33.)

Although the facts are in dispute as to whether plaintiff actually falsified his time records and approved the falsification of Herring's time records, these facts are not *material*. As will become apparent in the later discussion, the relevant facts are what T-Mobile believed in good faith at the time it terminated plaintiff.[2] In order to determine what T-Mobile in good faith

---

[2]   See *Holston v. Sports Auth., Inc.*, 136 F. Supp. 2d, 1332 (N.D. Ga. 2000) (Carnes, J.) ("[A]s long as the defendant held a

5

believed when it terminated plaintiff, this Court will look to the evidence that T-Mobile had when it terminated plaintiff.

T-Mobile believed that plaintiff was falsifying his time records and those of Herring based on three sources: (1) written and oral reports by Durden and Roosevelt to T-Mobile; (2) plaintiff's computerized time records; (3) and Herring's computerized time records.

First, comparing Durden and Roosevelt's report to plaintiff's time records reveals that plaintiff failed to record exception time on a number of days.[3]   (*Id.* at 171.)   The record contains a

good-faith belief that the plaintiff had, in fact, breached the work rule, a plaintiff cannot prevail, even if she did not actually violate this rule."); *see also Elrod v. Sears, Roebuck & Co.*, 939 F.2d 1466, 1470 (11th Cir. 1991) (holding that *McDonnell Douglas* framework limits pretext inquiry to whether employer *believed* that plaintiff was involved in conduct for which plaintiff was later terminated).

[3]   Durden and Roosevelt also reported to T-Mobile that plaintiff left his shift early and did not make himself available by phone. Plaintiff's deposition contains the following admission:

Q: Okay.  Were you aware that Ms. Durden and Mr. Roosevelt also reported that when you left the shift early you did not make yourself available by phone?

A: Yes.  And, you know, I must let you know, I am going to have them in court for that.  I will.

(Pl.'s Dep. at 171.) ´ Plaintiff calls Durden's and Roosevelt's accusations "not true." (*Id.* at 172.) Because the proper question is whether the employer *believed* the accusations, the Court may assume without any consequence to plaintiff's claim that Durden and Roosevelt were "lying through their teeth." *See Elrod v. Sears, Roebuck & Co.*, 939 F.2d 1466, 1470 (11th Cir. 1991).

6

handwritten document the plaintiff identifies as written by Durden. (*Id.* at 170 and Ex. 16.) This document contains a list of dates documenting the absences of plaintiff, Herring, and others. (*Id.* at Ex. 16.) The document records plaintiff's absences on February 3, 8, 20, and 22; March 9, 10, 17, 29, and 31; and April 6, 2005.[4] (*Id.* at Ex. 16.) Plaintiff's actual time records, however, only show that he recorded exception hours on March 9 and 10, 2005. (*Id.* at Ex. 14.) Thus, in the course of less than three months, T-Mobile had a record of eight days that plaintiff was absent when he did not record exception hours. Plaintiff acknowledged that missing an entire day would require an employee to enter exception time. (*Id.* at 78.)

Second, T-Mobile's computerized time records revealed that plaintiff had approved Herring's time records even when he knew them to be erroneous. Plaintiff admitted that Herring frequently missed work due to a chronic illness and that Herring recorded hours that he did not work. (*Id.* at 98-101, 106.) T-Mobile's records indicated, however, that plaintiff never disapproved of Herring's time records from October 11, 2004 to April 20, 2005. (*Id.* at Ex. 15.) During this time, Herring recorded sixteen

---

[4] In addition, the document records that plaintiff either left work early or spent an extended period away from work on March 8, 22, 24, 28, and 30; and April 4 and 5, 2005. (Pl.'s Dep. at Ex. 16.)

7

absences, but worked overtime almost every day that he was not absent. (*Id.* at 15.) Herring's overtime pay included one day on which he worked for 7.77 hours and then debited his sick time bank for 3.00 hours, resulting in 0.77 hours of overtime on a day that Herring failed to work a full shift; plaintiff approved these hours. (*Id.* at Ex. 15.) Plaintiff conceded that it was rational for T-Mobile to conclude that plaintiff was approving Herring's time records while knowing them to be false. (*Id.* at 160-61.)

Plaintiff contests T-Mobile's version of events. Plaintiff contends that when he skipped work, he later made up the hours according to a "straight-up understanding" that he had with McMillan. (*Id.* at 68.) Plaintiff also states that he discussed this with Human Resources Manager Kelly LaTanya ("LaTanya"). (*Id.* at 73.) However, plaintiff admits that LaTanya told him that he was required to input exception hours on the days that he did not show up for work at all. (*Id.* at 73.)

Plaintiff also contests T-Mobile's version of events with respect to Herring. Although plaintiff contends that he disapproved of Herring's time when Herring had incorrectly recorded it, plaintiff's contention wavers. (*Id.* at 103.) Plaintiff describes Herring's records for 2005 as "not accurate." (*Id.* at 108.) Plaintiff also says that Herring's records for January and

8

February of 2005 contain "[m]aybe one or two misses." (*Id.* at 108.)  Plaintiff asserts that he discussed Herring's absences with LaTanya and McMillan in March or April of 2005. (*Id.* at 98, 104, 105.)

After T-Mobile terminated plaintiff, plaintiff filed an unemployment benefits claim with the Georgia Department of Labor. (*Id.* at Ex. 17.)  The Department of Labor denied plaintiff's claim because T-Mobile terminated plaintiff for "falsifying time cards." (*Id.* at Ex. 17.)  An appeals tribunal affirmed the denial of plaintiff's claim. (*Id.* at Ex. 18.)  Plaintiff also filed a charge of discrimination with the Equal Opportunity Employment Commission (EEOC). (*Id.* at Ex. 19.)  The EEOC found that there was "no evidence" that plaintiff was terminated because of his Antiguan national origin. (*Id.* at Ex. 19.)  Thereafter, plaintiff filed the instant suit. (Complaint [1].)

## DISCUSSION

### I.   Summary Judgment Standard

Summary judgment is not properly viewed as a device that the trial court may, in its discretion, implement in lieu of a trial on the merits.  Instead, Rule 56 of the Federal Rules of Civil Procedure *mandates* the entry of summary judgment against a party who fails to make a showing sufficient to establish the existence

9

of *every* element essential to that party's case on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In such a situation, there can be no genuine issue as to any material fact, as a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. *Id.* at 322-23.

The movant bears the initial responsibility of asserting the basis for his motion. *Id.* at 323; *Apcoa, Inc. v. Fidelity Nat'l Bank*, 906 F.2d 610, 611 (11th Cir. 1990). The movant is not required to negate his opponent's claim, however. The movant may discharge his burden by merely "'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325. After the movant has carried his burden, the nonmoving party is then required to "go beyond the pleadings" and present competent evidence[5] designating "'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324 (quoting FED. R. CIV. P. 56(e)). While the court is to view all evidence and factual inferences in a light most favorable to the nonmoving party, *Samples v. City of Atlanta*, 846 F.2d 1328, 1330 (11th Cir. 1988), "the mere existence of *some*

---

[5]   The nonmoving party may meet its burden through affidavit and deposition testimony, answers to interrogatories, and the like. *Celotex*, 477 U.S. at 324.

AO 72A
(Rev.8/82)

alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

A fact is material when it is identified as such by the controlling substantive law. *Id.* at 248. An issue is genuine when the evidence is such that a reasonable jury could return a verdict for the nonmovant. *Id.* at 249-50. The nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986) (citations omitted). An issue is not genuine if it is unsupported by evidence, or if it is created by evidence that is "merely colorable" or is "not significantly probative." *Anderson*, 477 U.S. at 249-50. Thus, to survive a motion for summary judgment, the nonmoving party must come forward with specific evidence of *every* element material to that party's case so as to create a genuine issue for trial.

## II.  Employment Discrimination Claim

Defendants move for summary judgment on plaintiff's § 1981 and

11

Title VII claims.  Section 1981 and Title VII claims "have the same requirements of proof and use the same analytical framework" and, therefore, may be analyzed together.  *Standard v. A.B.E.L. Servs., Inc.*, 161 F.3d 1318, 1330 (11th Cir. 1998).

Title VII prohibits employers from terminating employees based upon, *inter alia*, race, color, or national origin.  42 U.S.C. § 2000e-2(a) (2006).  To establish a prima facie case of employment discrimination under Title VII, the plaintiff must present evidence that the employer possessed discriminatory intent.  *Standard*, 161 F.3d at 1330.  The plaintiff may show discriminatory intent through direct, circumstantial, or statistical evidence.  *Id.*  The type of evidence that the plaintiff presents then determines the analytical framework for evaluating the sufficiency of the plaintiff's evidence under the summary judgment standard.  Here, plaintiff has failed to provide any direct or statistical evidence of discrimination.  *Cf. id.* (citing *Carter v. City of Miami*, 870 F.2d 578, 580-81 (11th Cir. 1989)) ("Direct evidence is evidence that establishes the existence of discriminatory intent behind the employment decision without any inference or presumption."). Therefore, this Court will evaluate plaintiff's claim under the analytical framework for circumstantial evidence.

The Supreme Court established the framework for analyzing

12

circumstantial evidence of discriminatory intent in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817 (1973). The basic framework consists of three parts: First, the plaintiff must establish a prima facie case of employment discrimination. *Id.* at 802, 93 S. Ct. at 1824. Second, if the plaintiff establishes a prima facie case, then the burden shifts to the employer to rebut the plaintiff's case by proffering legitimate, nondiscriminatory reasons for its actions. *Id.* at 804, 93 S. Ct. at 1825. Third, if the employer proffers sufficient evidence to show that its actions were legitimate and nondiscriminatory, then the burden shifts to the plaintiff to rebut the employer's reasons by showing that they are merely a pretext for discrimination. *Id.* Ultimately, the purpose of the entire framework is to determine whether the plaintiff has proven that the employer's actions were discriminatory. *Holifield v. Reno*, 115 F.3d 1555, 1565 (11th Cir. 1997) (citing *Turnes v. AmSouth Bank, NA*, 36 F.3d 1057, 1061 (11th Cir. 1994)). The Court turns to this analysis now.

### A.   Plaintiff's Prima Facie Case of Employment Discrimination Fails Because He Has Not Shown That Other Similarly Situated Employees Were Treated Differently.

This Court has previously articulated a four-part test under the *McDonnell Douglas* framework for establishing a prima facie case of discriminatory discharge under Title VII. *See Holston v. Sports*

13

*Auth., Inc.*, 136 F. Supp. 2d 1319, 1326 (N.D. Ga. 2000) (Carnes, J.) (citing *McDonnell Douglas*, 411 U.S. at 802, 93 S. Ct. at 1824). Plaintiff must show that: (1) he is a member of a protected class; (2) he was subjected to an adverse job action; (3) his employer treated other similarly situated employees outside his protected class more favorably; and (4) he was qualified to do the job. *See id.*

Three parts of this four-part test are undisputed here. As to the first prong, it is undisputed that plaintiff is a member of at least two protected classes: a racial class (he is black)[6] and a national origin class (he is of Antiguan ancestry). As to the second and third prongs, it is also undisputed that, by being terminated, plaintiff was subjected to an adverse job action and that plaintiff was qualified to do his job. (Defs.' Br. at 2; *see* Pl.'s Dep. at 193.)   The only element in dispute is whether T-Mobile treated other similarly situated employees outside of plaintiff's protected classes more favorably.[7]

---

[6]   Plaintiff describes himself as "African-American," which phrase the plaintiff apparently uses as a racial term to indicate that he is black.  As plaintiff also describes himself as Antiguan, and as this national ancestry is the basis on which he claims discrimination, the Court will use the word "black" to describe his racial group and to avoid confusion as to the national ancestry group to which plaintiff  claims membership.

[7]   Although plaintiff's racial discrimination claim still fails under the same prima facie case analysis, this Court considers

14

To determine whether employees outside the plaintiff's protected class are treated more favorably, "it is necessary to consider whether the employees are involved in or accused of the same or similar conduct and are disciplined in different ways." *Holifield v. Reno*, 115 F.3d 1555, 1562 (11th Cir. 1997). Thus, "[t]he most important factors in the disciplinary context . . . are the nature of the offenses committed and the nature of the punishments imposed." *Jones v. Bessemer Carraway Med. Ctr.*, 137 F.3d 1306, 1311 (11th Cir. 1998) (internal quotation marks omitted). If the plaintiff does not show the existence of an employee who is similarly situated in all relevant respects, then the plaintiff cannot establish a prima facie case. *See Holifield*, 115 F.3d at 1562 (11th Cir. 1997) (citing *Smith v. Stratus Computer, Inc.*, 40 F.3d 11, 17 (1st Cir. 1994); *Williams v. Ford Motor Co.*, 14 F.3d 1305, 1309 (8th Cir. 1994); *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 583 (6th Cir. 1992); *Mack v. Great Atl. & Pac. Tea Co.*, 871 F.2d 179, 182 (1st Cir. 1989); *Smith v. Monsanto Chem. Co.*, 770 F.2d 719, 723 (8th Cir. 1985), *cert. denied*, 475 U.S. 1050, 106 S. Ct. 1273 (1986)). Therefore, to prevail on the third

---

plaintiff's claim that T-Mobile discriminated against him on the basis of his race as abandoned. (*See* Pl.'s Dep. at 193; Defs.' Br. at 13.) When discussing the way T-Mobile allegedly discriminated against him, plaintiff stated in his deposition testimony: "I'm not talking about black and white here. I'm just from a foreign place." (Pl.'s Dep. at 193.)

15

element of the prima facie case, plaintiff must show three sub-elements: (1) a similarly situated employee (2) accused of or involved in the same or similar conduct (3) for which the plaintiff and the similarly situated employee were disciplined in different ways. *See Jones*, 137 F.3d at 1311. Plaintiff has made no showing on any of these three sub-elements.

Specifically, plaintiff has made no showing that other similarly situated employees were accused of or involved in the same misconduct with which he was charged. As a result, he has necessarily failed to show that any such similarly situated employees were treated more leniently for their lapses.

Plaintiff does make a very vague suggestion in his deposition testimony that other managers approved false time records for their subordinates. This conjecture, however, is unsupported by any specificity or evidentiary support. (*See* Pl.'s Dep. at 162.) Therefore, plaintiff's allegation is of no probative value. Specifically, plaintiff made the following statement in his deposition:

> Q: When [Nancy Durden] left early and you didn't dock her, you knew that was against company policy?
>
> A: It is against company policy, but, you know, there's some things you just overlook for the moment. You know, there were times—again, they were all on salary. You know, other people do that.

16

> I sit there and see Gary McMillan let these guys go
> out the door half day. They're gone all day. He don't
> dock their time. I mean, I'm not the only people that do
> that. All the managers does that. There's nothing
> unusual.

(*Id.* at 162.) Plaintiff's assertions fail to meet the threshold of probative value required under the summary judgment standard.

When a court is considering a motion for summary judgment, conclusory allegations without specific supporting facts have no probative value. *Hilburn v. Murata Elecs. N. Am., Inc.*, 181 F.3d 1220, 1227-28 (11th Cir. 1999). Here, plaintiff presents no specific facts or instances—in his own deposition testimony, corroborating evidence, or the depositions, affidavits, or declarations of any other individuals—that would allow a rational fact-finder to conclude that other managers allowed employees to falsify their time records. Therefore, plaintiff has failed to show that others were accused of or involved in the same or similar conduct.

Finally, plaintiff fails to present any evidence of a disparity in disciplinary action. Plaintiff presents no evidence that T-Mobile continued to employ others after it discovered that they were falsifying their own time records or approving the falsification of others' time records. Instead, plaintiff testified in his deposition that T-Mobile terminated Herring, the

17

only other employee who was accused of falsifying his own time records. (Pl.'s Dep. at 186.) Therefore, plaintiff has failed to show disparity in disciplinary action.

## B.    T-Mobile  Has  Proffered  Legitimate,  Nondiscriminatory Reasons for Termination.

Even assuming that plaintiff could satisfy the requirements of the prima facie case, the burden shifts to T-Mobile to articulate a legitimate,  nondiscriminatory  reason  for  termination.    *See McDonnell Douglas*, 411 U.S. at 802, 93 S. Ct. at 1824.   If the plaintiff meets the burden of the prima facie case, then the employer  "must  'articulate  some  legitimate,  nondiscriminatory reason'  for  the  adverse  employment  action,  and  produce  some evidence in support of that reason."   *Holston*, 136 F. Supp. 2d at 1325 (quoting *McDonnell Douglas*, 411 U.S. at 802, 93 S. Ct. at 1824).    This is a burden of "production" and not "persuasion." *Standard*, 161 F.3d at 1331.   Therefore, this burden only requires that the employer produce such evidence that could allow a rational fact-finder to conclude that the employer discharged the plaintiff for a nondiscriminatory reason.   *Id.*

T-Mobile proffered two reasons for terminating plaintiff: (1) plaintiff falsified his own time records and (2) plaintiff approved Herring's time records, which plaintiff knew to be false.   (Pl.'s Dep. at 47; Defs.' Br. at 12.)   This conduct violated company

18

AO 72A
(Rev.8/82)

policy, as found in the T-Mobile Employee Handbook.  T-Mobile's proffered reasons for terminating Geran were matters of company policy and therefore legitimate and nondiscriminatory.

Under this element, T-Mobile must also provide some *evidence* from which a rational fact-finder could conclude that it discharged plaintiff for the proffered reasons.  Defendants have done this here.  T-Mobile possessed information tending to show that plaintiff was skipping work and not recording exception hours. Further, T-Mobile possessed information that plaintiff was knowingly approving Herring's falsified hours.  Plaintiff contends that he discussed this matter with McMillan and LaTanya, but this discussion was long after Herring's time records had been falsified.  Thus, having shown sufficient evidence to allow a rational finder of fact to conclude that the proffered two reasons were legitimate and nondiscriminatory, T-Mobile has successfully shifted the burden back to plaintiff to show that T-Mobile's proffered reasons are merely a pretext for discrimination.

**C.   Plaintiff Fails to Show That T-Mobile's Reasons for Discharge Are Merely a Pretext for Discrimination.**

If the employer succeeds in proffering a legitimate, nondiscriminatory reason for its actions, then the plaintiff must rebut the employer's reason by presenting evidence sufficient to show that employer's reason is "merely a pretext for

19

discrimination." *Holston*, 136 F. Supp. 2d at 1325 (citing *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253-54, 101 S. Ct. 1089, 1093-94 (1981)). The plaintiff may proceed by showing either that (1) the proffered reasons should not be believed or (2) that the discriminatory reasons *more likely* motivated the decision than the proffered reasons. *Id.* at 1338.

This burden requires a plaintiff to "demonstrate 'such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable fact finder could find [all those reasons] unworthy of credence.'" *Id.* at 1333 (quoting *Combs v. Plantation Patterns*, 106 F.3d 1519, 1538 (11th Cir. 1997)) (alteration in original). The pretext inquiry is concerned with the employer's view of the employee and whether the employer was in fact motivated by the proffered reasons, rather than how the employee viewed his own actions or how he perceived his employer's motivations. *See id.* at 1332-33, 1337. A plaintiff may not simply make conclusory allegations of discrimination to advance the pretext argument. *See Elrod v. Sears, Roebuck & Co.*, 939 F.2d 1466, 1471 (11th Cir. 1991).

First, plaintiff has failed to show that T-Mobile's proffered reasons for termination should not be believed. The record

20

contains enough evidence to prove that T-Mobile believed plaintiff
was falsifying his time records and approving the falsification of
Herring's time records.   While he disagrees with the reasons for
which he was terminated, plaintiff does not present any evidence to
suggest that his employer fired him for a discriminatory reason.
Plaintiff's most substantive discriminatory allegations against
T-Mobile during his deposition testimony are simply insufficient
for a rational fact-finder to conclude that T-Mobile discriminated
against plaintiff:

> Q: Do you have facts to support your conclusion that
> it was also from where you were from [that was a factor
> in your termination] other than your feelings?
>
> A: Again, only thing I can say is people's actions
> toward you.
>
> Q: Okay.
>
> A: You know, I mean, it's about actions.   You know,
> I put this into simple context.   You know, if you go in
> an area, and, you know, it's just, okay, I don't like
> that person because he's black.   I don't like that person
> because he's white.   I'm not talking about black and
> white here.   I'm just from a foreign place.   I'm not
> going to see no foreigner over me.   It doesn't matter
> where I was.
>
> Q: So when you're talking origination, you're not
> talking about your race, but the fact that you're from a
> foreign country?
>
> A: Yes.
>
> Q: Okay.   And in terms of that, when you say
> actions, are there any actions other than those you've

21

AO 72A
(Rev.8/82)

testified about that you're referring to?

A: Again, you know, the way people deal with you. You can feel it. I mean, it's nothing but feelings and people's actions. That's what drives whatever it is.

Q: Okay.

A: You know, you know where you stand with people based upon the way they deal with you, the way they talk to you, you know. And that's how you know where you stand.

Q: Are there any other facts, other than what you've testified, that cause you to have the feeling that where you were from might have been a factor in the termination decision?

A: No. I think those are the main factors.

(Pl.'s Dep. at 192-94.) A string of "you-knows" and conclusory statements about "feelings" and "people's actions" are insufficient for this Court to consider on a motion for summary judgment. Again, when a court is considering a motion for summary judgment, conclusory allegations without specific supporting facts have no probative value. *Hilburn*, 181 F.3d at 1227-28; *see also Elrod v. Sears, Roebuck & Co.*, 939 F.2d 1466, 1471 (11th Cir. 1991). Therefore, plaintiff has failed to show that T-Mobile's proffered reasons for termination should not be believed.

Second, plaintiff has also failed to show that discriminatory reasons *more likely* motivated the decision than the proffered reasons. It is unusual, and perhaps not entirely contemplated by

22

the burden-shifting framework, that the plaintiff himself would proffer a legitimate, nondiscriminatory reason for his termination. However, plaintiff has done that here.  Plaintiff asserts that "the main reason" and "one of the major reasons" he was terminated was because the other managers in the Data-Operations Center knew that plaintiff made more money than they did.[8]  (Pl.'s Dep. at 188, 190.)  Confusingly, and somewhat inconsistently, plaintiff later states in his affidavit, "The only reason I was really pushed out was because of salary, ethnicity and nationality."  (Plaintiff's Affidavit at 4.)

---

[8]  The facts supporting this conclusion are not in dispute. Plaintiff claims that his pay stub went missing about a month after he began working in Atlanta.  (Pl.'s Dep. at 174.)  A week after plaintiff's pay stub went missing, David Wilson, another manager at T-Mobile, told plaintiff, "You know, some people make a lot of money and they don't do anything.  And the people who does [sic] a lot of things, don't get paid."  (Id. at 175.)  This caused plaintiff to conclude that Wilson had taken his pay stub and revealed plaintiff's salary to the other managers.  (Id. at 176, 179.)

After this incident, plaintiff's desk was moved nearer to the operators' desks, out of the managers' office; his chair was frequently missing when he got to work; and his pay stub was placed "somewhere else all the time" instead of in his desk drawer.  (Id. at 176-77.)  Plaintiff discussed these occurrences with LaTanya. Plaintiff told LaTanya that he felt like he was "being set up for failure" and that the people on his shift were being "totally isolated" because nobody would "tell[] [plaintiff] anything."  (Id. at 177.)  LaTanya told plaintiff to talk to his manager, McMillan; plaintiff discussed these issues with McMillan, but McMillan said that he had "no problem" with plaintiff and that plaintiff was "doing a good job."  (Id. at 177.)

23

To the extent that plaintiff's proffered "main" and "major"
reason for his termination was his high salary (see Pl.'s Dep. at
174-79), salary level is not a protected class under Title VII (see
42 U.S.C. § 2000e-2(a)).   Hence, even if plaintiff were correct
that his high salary--not his submission of false time reports--
was the reason behind his termination, such a ground is not an
impermissible or discriminatory reason for discharging an at-will
employee.

Because plaintiff has failed to show that T-Mobile's proffered
reasons for termination should not be believed or that
discriminatory reasons *more likely* motivated the decision than the
proffered reasons, plaintiff has failed to prove that T-Mobile's
proffered reasons are merely a pretext for discrimination.

In short, plaintiff has failed to establish a prima facie case
and failed to show evidence of pretext in response to T-Mobile's
proffered legitimate, nondiscriminatory reasons for his
termination.   Accordingly, defendants' motion for summary judgment
should be granted with respect to the Title VII and § 1981 claims
against defendants.[9]

---

[9]  Plaintiff cannot proceed against McMillan on a Title VII
claim.   Title VII grants relief against employers, but not against
individuals.   See *Busby v. City of Orlando*, 931 F.2d 764, 772 (11th
Cir. 1991) (citing *Clanton v. Orleans Parish Sch. Bd.*, 649 F.2d
1084, 1099 & n.19 (5th Cir. 1981)).   The Eleventh Circuit in *Bonner
v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981), adopted

24

## CONCLUSION

For the foregoing reasons, the Court **GRANTS** defendants' Motion for Summary Judgment [16].

SO ORDERED, this $25$ day of March, 2008.

JULIE E. CARNES
UNITED STATES DISTRICT JUDGE

as precedent decisions of the former Fifth Circuit rendered prior to October 1, 1981.

25